UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:17-CV-00335-TBR

KATHRYN CREECH,                                                                                      PLAINTIFF

v.

BLUE CROSS AND BLUE SHIELD
OF FLORIDA, INC.,                                                                                       DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Blue Cross and Blue Shield of Florida, Inc.'s motion to dismiss or improper venue, or, alternatively, to transfer this case to the Middle District of Florida. [DN 5.] Plaintiff Kathryn Creech responded, [DN 6], and Defendant replied, [DN 7.] Fully briefed, this matter is now ripe for adjudication. For the reasons stated herein, Defendant's motion is **GRANTED IN PART AND DENIED IN PART**.

BACKGROUND

This action arises out of Plaintiff Kathryn Creech's former employment with Defendant Blue Cross and Blue Shield of Florida, Inc. ("Florida Blue"). Creech, who works in the corporate healthcare industry, worked as the Vice President of Humana, Inc. in Louisville, Kentucky, from September 2008 to February 2015. [DN 1-1 (Complaint).] Prior to that, she worked as the President and CEO of Miavita and the Vice President of Matria Healthcare. While she was Vice President at Humana, Inc., Creech attained a "strong public record in leading Humana's Star Quality Program to achieve industry leadership." [*Id.* at 2.] "Because of [Creech's] expertise in [h]ealthcare, Florida Blue engaged in actively recruiting her after she responded to a position posted for a Leader of Medicare Star Program for Florida Blue. [*Id.*] Florida Blue upgraded the

1

position to Vice President of the Medicare Star Program to actually land Creech" as an employee. [*Id.*]

In a letter dated December 28, 2015, Florida Blue formally offered Creech the position of Vice President of its Medicare Star Program. [*Id.*] Creech accepted the position, which allowed her to work from home in Kentucky and travel to Florida as needed, with the expectation of an eventual relocation to Florida in September 2017. [*Id.* at 3.] In her complaint, Creech alleges that, during her employment with Florida Blue, she "worked from Kentucky approximately 60% of the time and worked in Florida approximately 40% of the time." [*Id.*] While working in Kentucky, Creech worked from "a phone, a headphone, an official Florida Blue laptop computer, docking station, secure printer, as well as a separate computer monitor," all of which Florida Blue provided to her. [*Id.* at 2.] Florida Blue, on the other hand, contends that "Creech spent approximately 61% of her time working for Florida Blue in Florida and was provided an apartment to live in while performing services at Florida Blue's Jacksonville headquarters." [DN 5 at 2.]

In October, 2016, Creech "was preparing the presentation and review of her department's proposed 2017 operating and staff budget for the Medicare Star Program." [DN 1-1 at 4; DN 5 at 2.] According to Creech, "she was abruptly uninvited to the meeting to review the 2017 Medicare Stars Budget, literally at the last moment and via text message." [DN 1-1 at 5.] Creech claims that, as a result, she became "concerned with her ability to perform her duties as VP of Medicare Stars" and, therefore, "made the executive decision to call into her budget meeting to make sure she didn't miss any critical information." [*Id.*] Thereafter, Florida Blue indicated to Creech that she had acted insubordinately for calling into the meeting. [*Id.*] Creech claims that she was then "terminated without cause." [*Id.*]

2

Florida Blue tells a similar version of events, but with some differences. According to Florida Blue, Creech

> was allowed to resign in lieu of termination after she secretly joined and eavesdropped on an October 27, 2016, conference call/meeting between her supervisor, Luisa Charbonneau and other top executives at Florida Blue ("the October Conference Call"). Creech did so after Charbonneau specifically directed Creech not to participate in the call. When the participants on the October Conference Call heard suspicious audible beeps and asked if anyone had joined the call, Creech remained silent. Creech only admitted to having secretly eavesdropped on the October Conference Call when she was confronted with the Company records proving that she had joined the call.

[DN 5 at 2.]

On May 2, 2017, Creech filed suit against Florida Blue in Jefferson County District Court in Louisville, Kentucky, alleging breach of contract and violations of Kentucky wage and hour laws. [*See* DN 1-1.] Florida Blue later removed the action to the District Court for the Western District of Kentucky and filed the instant motion to dismiss for improper venue or, in the alternative, to transfer. [DN 1 (Notice of Removal); DN 5 (Motion to Dismiss or Transfer).]

STANDARD

Under Federal Rule of Civil Procedure 12(b)(3), a defendant may move to dismiss an action on the grounds that it was filed in an improper venue. Fed. R. Civ. P. 12(b)(3). Federal law provides that "[a] civil action may be brought in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Even if venue is proper, however, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. §

1404(a). "Once challenged, Plaintiff bears the burden of showing that its initial choice of venue is proper." *Sechel Holdings, Inc. v. Clapp*, No. 3:12-CV-00108-H, 2012 WL 3150087, at *2 (W.D. Ky. Aug. 2, 2012) (Heyburn, J.) (citing *Crutchfield v. Santos,* No. 5:07-CV-94–R, 2007 WL 4124713, at *1 (W.D. Ky. Nov. 19, 2007) (Russell, J.)). "The Court may examine facts outside the complaint but must draw all reasonable inferences and resolve factual conflicts in favor of the plaintiff." *NHCLC-Seattle, LLC v. Kauffman*, No. 13-12804, 2013 WL 6474197, at *2 (E.D. Mich. Dec. 10, 2013) (quoting *Audi AG & Volkswagen of Am., Inc. v. Izumi,* 204 F. Supp. 2d 1014, 1017 (E.D. Mich. 2002)).

DISCUSSION

Florida Blue requests that the Court either dismiss this case for improper venue pursuant to Rule 12(b)(3) or, alternatively, transfer the case to the Middle District of Florida for the convenience of the parties, witnesses, and in the interests of justice pursuant to 28 U.S.C. § 1404(a). [DN 5 at 3.]

**1) Whether Venue is Proper**

First, the Court must determine whether the Western District of Kentucky is a proper venue for this case. 28 U.S.C. § 1391(b)(2) provides that that "[a] civil action may be brought in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). The Sixth Circuit has interpreted this provision to mean that "the plaintiff may file his complaint in *any* forum where a substantial part of the events or omissions giving rise to the claim arose; this includes any forum with a substantial connection to the plaintiff's claim." *First of Michigan Corp. v. Bramlet*, 141 F.3d 260, 263 (6th Cir. 1998). Accordingly, the Court need not "base[] its determination that venue [i]s improper on a single occurrence which directly gave rise to the plaintiffs' action;" rather, it must merely "consider[]

whether the forum the plaintiffs chose had a substantial connection to their claim." *Id.* at 264. Courts applying this standard have explained that "venue may be proper in two or more districts, even though most of the events occurred in only one of the districts." *NHCLC-Seattle*, 2013 WL 6474197, at *2 (quoting *Capitol Specialty Corp. v. Splash Dogs, LLC,* 801 F. Supp. 2d 657, 671–72 (S.D. Ohio 2011)); *see also IFL Grp. Inc. v. World Wide Flight Serv., Inc.*, 306 F. Supp. 2d 709, 711 (E.D. Mich. 2004) ("Just because venue is proper in that district, however, does not entail that it is not proper in another district; 'venue may be proper in more than one judicial district.'") (citation omitted).

Here, Florida Blue contends that venue is not proper in the Western District of Kentucky because "a substantial part of the events giving rise to this lawsuit all took place in and relate to activities in Florida – not Kentucky." [DN 5 at 6.] Specifically, it argues that "[t]he majority of Creech's work was performed in Florida; Creech was directed not to join the October Conference Call while she was working in Florida; Creech chose to dial into the October Conference Call while working in Florida; and Creech was advised that she would be terminated, but ultimately allowed to voluntarily resign, while in Florida." [*Id.*] Florida Blue contends that "[n]othing about this case relates to Kentucky, except Creech's place of residence." [*Id.*]

In response, Creech argues that she "was recruited by Florida Blue, signed her contracts with Florida Blue, worked for Florida Blue [50% of the time], was enabled by Florida Blue to continue working in her current location, worked extensively on the 2017 STARS program, and worked on her presentation for the October 27, 2016 conference meeting all in Jefferson County, Kentucky." [DN 6 at 7.] Though this presents a close call, the Court finds these arguments persuasive. Creech brings the instant suit, in part, based on the alleged breach of two different agreements she signed: her December 23, 2015 Offer Letter and a Confidentiality, Non-

5

Competition and Non-Solicitation Agreement. [DN 1-1 at 6; DN 6 at 3.] In the Offer Letter, Florida Blue stated that Creech would receive a $250,000 annual salary, a Management Inventive Plan, a Long Term Performance Incentive Plan, a sign-on bonus, an Executive Non-Qualified Deferred Compensation Plan, and a Supplemental Executive Retirement Plan. [DN 5-1 at 6–7.] The Confidentiality, Non-Competition and Non-Solicitation Agreement, which Creech signed on February 26, 2016, provided, among other things, that if Creech's employment was "involuntarily terminated for any reason other than for cause," then "Florida Blue will provide continued base salary payments and group health insurance benefit coverage for Ms. Creech" for twelve months. [DN 5-1 at 12.] Both of these agreements were entered into in Kentucky, and Creech alleges that Florida Blue breached each of these agreements. Moreover, Creech provided substantial work for Florida Blue in Kentucky, including the work leading up to the October 27, 2017 conference call which ultimately led to her resignation. Based on these facts, the Court is satisfied that "a substantial part of the events or omissions giving rise to the claim occurred" in Kentucky such that the Western District of Kentucky is a proper venue for this case. 28 U.S.C. § 1391(b)(2).

Though, as Florida Blue argues, the Middle District of Florida may also be a proper venue, venue is proper in "any forum with a substantial connection to the plaintiff's claim," *Bramlet*, 141 F.3d at 263, and therefore "venue may be proper in two or more districts, even though most of the events occurred in only one of the districts." *NHCLC-Seattle*, 2013 WL 6474197, at *2. Accordingly, the portion of Florida Blue's motion seeking dismissal or transfer of this action due to improper venue under Rule 12(b)(3) is denied.

### 2) Whether Transfer is Appropriate

Florida Blue alternatively requests that the Court transfer the case to the Middle District of Florida "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). As the Court determined above, the Western District of Kentucky is a proper forum for Creech's suit pursuant to § 1391(b)(2). However, merely because venue is legally proper in a given judicial district does not mean that district is the most convenient or appropriate venue to adjudicate the dispute. To remedy this type of situation, 28 U.S.C. § 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

#### a) Whether Creech's Suit Could Have Been Brought in the Middle District of Florida

"The threshold question before transferring a case is always whether the action 'might have been brought' in the potential transferee venue." *United States v. Hargrove*, No. 3:16-CV-503-DJH-CHL, 2017 WL 403571, at *4 (W.D. Ky. Jan. 30, 2017) (quoting 28 U.S.C. § 1404(a)). As the Court explained above, under § 1391(b)(2), venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). Though the parties disagree as to the exact percentage of time Creech spent working in Florida, even Creech acknowledges in her response that it was at least 48%. [*See* DN 6 at 2.] Moreover, as Florida Blue argues, it is undisputed that Creech "was in Florida working for Florida Blue on the following dates: October 24-28, 2016; October 31-November 3, 2016; and November 14-17, 2016." [DN 7 at 1.] It is also undisputed that, during those dates, Creech "attended an executive meeting via phone without announcing her presence to those attending the meeting," [*id.*], and that, while still in Florida on November 15, 2016, Creech admitted, via

7

email, to having joined the call without permission. [DN 5 at 4–5.] Finally, Creech does not dispute that Florida Blue told her, in Florida, that "she would be terminated for cause due to her actions." [DN 7 at 1.]

Based on these facts, the Court agrees with Florida Blue that a substantial amount of the events giving rise to Creech's termination and, by extension, her claims, took place in Florida. Accordingly, Creech's action "might have been brought" in the Middle District of Florida as required under § 1404(a), thereby satisfying this threshold requirement.

### b) Whether the Applicable Factors Weigh in Favor of Transfer

Next, the Court must determine whether, after weighing various factors, transfer is warranted to serve "the convenience of parties and witnesses, [and] the interest[s] of justice." 28 U.S.C. § 1404(a). Courts within the Sixth Circuit have identified nine factors for courts to consider when deciding whether to grant a motion to transfer under § 1404(a). These include:

> (1) the convenience of witnesses; (2) the location of relevant documents and relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Long John Silver's, Inc. v. Nickleson*, No. 3:11-CV-93-H, 2011 WL 5025347, at *4 (W.D. Ky. Oct. 21, 2011) (quoting *Cowden v. Parker & Assocs., Inc.*, No. CIVA 5:09-CV-0323-KKC, 2010 WL 715850, at *2 (E.D. Ky. Feb. 22, 2010)). The Sixth Circuit has explained that, "[a]s the permissive language of the transfer statute suggests, district courts have 'broad discretion' to determine when party 'convenience' or 'the interest of justice' make a transfer appropriate. Only when the district court 'clearly abuse[s] its discretion' in balancing these considerations will we reverse." *Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2009) (quoting *Phelps v. McClellan,* 30 F.3d 658, 663 (6th Cir. 1994)).

### i. Convenience of Witnesses

"[T]he convenience of the witnesses has been recognized as perhaps the most important factor in the transfer analysis." *W. Am. Ins. Co. v. M&M Serv. Station Equip. Specialists, Inc.*, No. 1:16-CV-00046-GNS, 2017 WL 441542, at *2 (W.D. Ky. Feb. 1, 2017) (quoting *Boiler Specialists, LLC v. Corrosion Monitoring Servs., Inc.*, No. 1:12-CV-47, 2012 WL 3060385, at *3 (W.D. Ky. 2012)). However, "[i]t is the convenience of the non-party witnesses ... that is the more important factor and is accorded greater weight." *Id.* (quoting *Boiler Specialists*, 2017 WL 3060385, at *3). Party witnesses, "and those closely aligned with a party, such as employees," "are presumed to be willing to testify in either forum despite the inconvenience." 17 Georgene M. Vairo, *Moore's Federal Practice* § 111.13[1][f][iii] (Matthew Bender 3d ed. 2017).

Florida Blue contends that all of the witnesses it would call at trial to demonstrate that Creech was terminated "for cause," namely, several of its employees, reside in Florida. [DN 7 at 7.] Therefore, according to Florida Blue, the convenience of the witnesses factor weighs in favor of transferring the case to Florida. Creech makes two arguments in response. First, she asserts that this case boils down to pure contract interpretation, making calling any of Florida Blue's employee-witnesses unnecessary. [DN 6 at 9–10.] *See W. Am. Ins. Co. v. M&M Serv. Station Equip. Specialists, Inc.*, No. 1:16-CV-00046-GNS, 2017 WL 441542, at *2 (W.D. Ky. Feb. 1, 2017) ("West American asks the Court to interpret an insurance contract and determine its obligations in relation to the complaint filed by Montgomery in Rowan Circuit Court. Thus, it is unlikely that any of the witnesses identified by M&M will need to appear in court.").

Here, however, Creech's breach of contract claim rests, in part, on an assertion that she was "terminated without cause." [DN 1-1 at 6.] Florida Blue states, and Creech does not dispute, "[t]he facts surrounding her 'for cause' termination exclusively arose and occurred in Florida

where all relevant witnesses reside and work, except for Creech." [DN 7 at 7.] Specifically, the conference call that ultimately lead to Creech's threatened termination and, later, resignation, occurred in Florida, and all participants to that call, other than Creech, reside in Florida. Because it is reasonable that Florida Blue would call these witnesses to explain the events leading up to, during, and following that October 27, 2016 conference call to demonstrate that it terminated Creech "for cause," the Court disagrees that it is unnecessary for those Florida Blue to call those witnesses.

Second, Creech argues that, because all of the witnesses Florida Blue references are its own employees, they are "party witnesses," and that "significant weight should not be given to the convenience of witnesses who are party agents." [DN 6 at 10.] True, "the convenience of party witnesses is generally not a significant factor in determining whether transfer is appropriate." *Pharmerica Corp. v. Crestwood Care Ctr., L.P.*, No. 3:12-CV-00511-CRS, 2013 WL 5425247, at *2 (W.D. Ky. Sept. 26, 2013). However, "it deserves consideration in cases such as this where all party witnesses reside in the same locale." *Id.* (citations omitted). Here, *all* of the witnesses Florida Blue has identified live in Florida. On the other hand, Creech has not identified any witnesses she would call at trial, much less any that reside in a place other than Florida. Accordingly, the Court finds that the fact that all of the identified witnesses in this case reside in Florida, despite the fact that those witnesses are also Florida Blue's employees, weighs in favor of transfer.

### ii. The Location of Relevant Documents and Relative Ease of Access to Sources of Proof

Florida Blue argues that, because "[a]ll or nearly all relevant documents and information relating to this case are located in Florida Blue's Corporate Headquarters in Jacksonville, Florida," "Florida will provide more convenient access to proof" in this case. [DN 5 at 9.] In

10

response, Creech points out, and the Court agrees, that this factor is of little importance because "technological advancements have facilitated the electronic storage and transmission of documents from one forum to another." *Cowden*, 2010 WL 715850, at *4. Moreover, "the location of documents is a relatively less important consideration in the transfer convenience analysis, given the comparatively low cost of transporting documents." *Mcintosh v. E-backgroundchecks.com, Inc.*, No. CIV.A. 5:12-310-DCR, 2013 WL 954281, at *4 (E.D. Ky. Mar. 11, 2013) (citations omitted).

In its reply, Florida Blue also points out that, because some of the proof in this case will be testimonial, including rebuttal testimony, this factor also requires the Court to take into consideration that all of the witnesses likewise reside in Florida. Overall, the Court agrees that, because the witnesses who are expected to testify in this case, and, to a lesser extent, the documentary evidence, are all located in Florida, this factor also weighs in favor of transfer. *See id.* ("Although this factor weighs slightly in favor of transfer, it is not entitled to much weight due to the ability to transmit documents electronically.").

### iii. The Convenience of the Parties

Because Creech lives in Kentucky, while Florida Blue operates in Florida, "a transfer would simply shift some of the inconvenience of litigating from the Defendant[] to the Plaintiff[]." *Long John Silver's, Inc. v. Nickleson*, No. 3:11-CV-93-H, 2011 WL 5025347, at *5 (W.D. Ky. Oct. 21, 2011). Certainly, transfer is not warranted "if the result is simply to shift the inconvenience from one party to another." *Sullivan v. Tribley*, 602 F. Supp. 2d 795, 800 (E.D. Mich. 2009) (citation omitted). Accordingly, this factor does not weigh in favor of either party, and is therefore neutral.

#### iv. The Locus of the Operative Facts

Though Creech resides in Kentucky, signed her employment contracts in Kentucky, and worked for substantial periods of time in Kentucky, all of the operative facts giving rise to her ultimate resignation and, as a result, this lawsuit, occurred in Florida. Creech was working in Florida when she called into the October 27, 2016 conference call and when she ultimately admitted to joining that call on November 15, 2016. [DN 7 at 3–4.] Similarly, Creech was in Florida on November 17, 2016 when Florida Blue initially told her she would be terminated and also when Florida Blue later informed her that she would be allowed to resign in lieu of termination. [*Id.*] Accordingly, the Court finds that the locus of operative facts involved in this case took place in Florida. Therefore, this factor weighs in favor of transfer.

#### v. The Availability of Process to Compel the Attendance of Unwilling Witnesses

Because this Court's subpoena power to compel the attendance of out-of-state witnesses for a trial, hearing, or deposition extends only 100 miles, that power cannot reach Florida witnesses. Fed. R. Civ. P. 45(c)(1)(A). Accordingly, should it become necessary for a court to compel the attendance of any witnesses that reside more than 100 miles from the Western District of Kentucky, such as any Florida witnesses, a court in the Middle District of Florida would be in a better position to exercise that power. True, as Creech argues, it may not prove necessary to subpoena any witnesses in this case since all of the witnesses Florida Blue has identified are its employees. [DN 6 at 13.] Nonetheless, this factor weighs in favor of Florida Blue, even if only slightly.

#### vi. The Relative Means of the Parties

According to Creech, "a successful company has greater means than an individual" to litigate in an out-of-town district. [DN 6 at 14.] For instance, Creech does not maintain a

residence in Florida. [*Id.*] On the other hand, Creech argues that Florida Blue is a thriving company which has enjoyed great success in recent years, and therefore is more equipped to bear the costs of litigating the case far from its headquarters. [*Id.*] Indeed, some courts have recognized, as a matter of common sense, that an individual party may have less means to litigate than a company party. *See Speedshape, Inc. v. Meechan*, No. 11-14670, 2012 WL 1672979, at *4 (E.D. Mich. May 14, 2012) ("Defendant, as an individual, clearly has less means than Plaintiff," a company.) Here, by virtue of the facts that Creech is an individual and does not reside in Florida, it follows logically that she has less means to litigate in a faraway district than Florida Blue. Accordingly, this factor weighs against transfer.

      vii.      **The Forum's Familiarity With the Governing Law**

Creech brings two claims in this action, first for breach of contract and second for alleged violations of Kentucky wage and hour laws. [DN 1-1 at 6–8.] Florida Blue argues, and Creech does not dispute, that her Non-Competition Agreement specifies that it must be interpreted in accordance with Florida law. [DN 5-1 at 13; DN 6 at 15.] Creech argues, however, that her wage and hour claim, brought under Kentucky statutes, necessarily requires the application of Kentucky law. [DN 6 at 15.] Because it appears that both Florida law and Kentucky law are at issue in this case, neither a Kentucky forum nor a Florida forum would have greater familiarity with the governing law. Accordingly, this factor is neutral.

      viii.      **Plaintiff's Choice of Forum**

Generally, courts give great weight to the plaintiff's choice of forum. *See Reese*, 574 F.3d at 320 ("[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."). On the other hand, "this factor is not dispositive," *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 413 (6th Cir. 1998), particularly in cases in which several of the

transfer factors weigh strongly in the defendant's favor. *Reese*, 574 F.3d at 320. Accordingly, this factor weighs in Creech's favor, though only slightly.

>   **ix.   Trial Efficiency and the Interests of Justice, Based on the Totality of the Circumstances.**

In sum, the Court has concluded that the convenience of the witnesses, the location of documents and proof, the locus of operative facts, and the ability to subpoena unwilling witnesses all favor transfer of this case to the Middle District of Florida. Creech's choice of forum and the relative means of the parties, on the other hand, tend to weigh against transfer. Finally, the convenience of the parties and the forum's familiarity with the governing law factors are neutral, and thus do not weigh for or against transfer.

Overall, the Court agrees with Florida Blue that, because the relevant events that ultimately caused the end of Creech's employment with Florida Blue took place in Florida, along with the fact that the only witnesses that either party has identified in this case reside in Florida, the interests of justice would be served by transferring this case to the Middle District of Florida. Accordingly, Florida Blue's alternative motion to transfer this case to that district is granted.

## CONCLUSION

For the foregoing reasons, Defendant's motion, [DN 5], is **GRANTED IN PART AND DENIED IN PART**. It is denied with respect to Defendant's request to dismiss or transfer the case for improper venue. However, it is granted with respect to Defendant's request to transfer the case to the Middle District of Florida under 28 U.S.C. § 1404(a) in the interests of justice. Accordingly, the Clerk is hereby **ORDERED** to transfer this case to the Middle District of Florida.

Date:

cc:    Counsel